Today, the first case is 2018-10353, Norvis Harmon v. Dallas County, Texas and Derek Evans. You may proceed. May it please the court, William Dunleavy for the appellant Norvis Harmon. In this case, I don't believe procedural or the substantive facts are in dispute. Former constable, former elected constable of Dallas County, Derek Evans broke the law. Former deputy constable Norvis Harmon and many others reported that. They blew the whistle. They spoke on a matter of public concern. What was never disputed in the trial court was did Harmon speak as a citizen? Did he speak as part of his duties? That issue was never raised by either Dallas County or by Derek Evans. The only person raised that was Judge Lindsey after Judge Solis had already denied a motion for judgment as a matter of law. So the citizen speech, official speech, just was not an issue in this case. Once the the constable, Derek Evans, spoke to his deputies and he told them, some of you are throwing rocks. I'm gonna save my rocks and I'm gonna be throwing them back. That's just what he did. He waited 11 months and then he fired a series of deputies including Norvis Harmon. He did what he said he would do and the summary judgment said there's no temporal relationship. It's 11 months but the facts were, as Judge Solis correctly ruled, that Evans did what he said. There was a relationship. Counsel, how do you deal with the fact that whether or not he's in privity for purposes of the judgment? Your Honor, that's a really interesting point and Dallas County says they're in privity. Judge Lindsey says privity. Dallas County was not representing Derek Evans' interest in the state court. Dallas County in state court said, you got to sue somebody else. You got to sue Derek Evans about his ultra-virus act. If somebody's representing my interests, I sure don't want them to tell the court or tell the other side, go sue Dunleavy. Dallas County was not representing Evans' interests. And they called them ultra-virs? Yes, Your Honor. State court, they said these are ultra-virus claims, ultra-virus claims and you can't bring them against the county. Derek Evans was not a party in the state court lawsuit because it was a whistleblower case. Texas Whistleblower Act does not allow a cause of action against a supervisor or a co-worker. You just can go against the in the state court case. He wasn't in privity with Dallas County. They didn't have the same interests in the state court case and that's clear because Dallas County said sue Evans. They pinned it on him? Yes. They didn't represent, were, no, this wasn't speech inappropriate or? No, there was no speech issue. No, but there wasn't a whistleblower, if they didn't say nobody did it, were, this is, okay. I think ultimately they might have gotten to that, but they never did. And whether in state court or in federal court, no one on the defense side ever said he didn't do these things. No one ever said this isn't speech on a matter of public concern. No one ever said he's not reporting a violation of law. Those issues were never raised. Dallas County in the state court said you don't have jurisdiction and the state court agreed. So moving on to, you know, this is one issue. Are they the same causes of action is another issue. Is there a final judgment on the merits? This court's jurisprudence says a merits decision is required following the state law on res judicata. Jurisdictional decisions are not merits decisions. State court said we don't have jurisdiction, we're not going to hear this case. Res judicata is supposed to be based upon an opportunity to be heard, and that didn't happen in the state court. Getting back to . . . Did you want to discuss the Thompson case that is cited in the opposing counsel's 28J? Absolutely, Your Honor, and I'm prepared to do that. Great case. Judge Willett wrote the opinion. I understand, Judge Elrod, you were on the panel. I'm sure that's why it got cited. But it doesn't really have a whole lot to do with this case. What Thompson addresses is the fact that you had two lawsuits filed apparently at the same time, state court, federal court, and they were barred by limitations. A defensive issue, a defensive bar. That's a substantive merits decision. As opposed to jurisdiction and whether or not . . . The threshold question of jurisdiction. So, sure, you get barred by limitations in the other court, and you preserve judicial resources by not doing it twice. That's not what happened here. State court lawsuit was filed. State law claims were asserted. The state court said, I don't have jurisdiction. Harmon went to federal court with this federal claim. So, he's allowed to do that. And since the state court said, you've got ultra-virus claims that you need to the party they're now claiming they were in privity with . . . Counsel, what do you do about the argument that if a court dismisses for lack of subject matter jurisdiction because of immunity, it's a decision on the merits, that Texas law might hold that? Do you disagree that Texas law holds that? Or do you think this wasn't because of immunity? Go ahead. I don't know that I can agree or disagree to tell you whether that's the case. What I can say is, it doesn't matter because that was not the decision. The state court said, I'm just not going to hear it. No jurisdiction. And did not make an immunity decision in this case? No, Your Honor. So, when Norvis Harmon, 11 months later, got fired, he filed a grievance. And he filed this grievance with the county, and he filed this grievance with his It was never heard by either Dallas County or Derek Evans. So he filed his state court lawsuit, whistleblower lawsuit, seeking to have his grievance heard. There were other claims to enjoin the bad acts that Dallas County said were ultra-virus acts. And ultimately, the state court ruled no jurisdiction on the whistleblower claims, ultra-virus acts, you've got to bring against the Because Derek Evans, by the time of the ruling of the state court, had been tossed out of office based on an indictment for the very acts that Harmon complained of, they said this issue is moot because the relief you're seeking, he isn't there anymore. So, these decisions of no jurisdiction, you've sued the wrong party, and the issues are moot, are not merits decisions under this court's jurisprudence. So, once the state court said no jurisdiction, Harmon did what he should have done. He filed a federal court, a federal claim. And Derek Evans was made a party to allow Harmon to pursue relief for Evans' bad acts. If we do not agree with you, and I'm not foreshadowing, just hypothetically, if we do not agree with you that they didn't raise the Garcetti issue at the proper time, can you still win? Yes, Your Honor. Judge Solis got it against your subordinate, against your employee for blowing the whistle or for speaking on a matter of public concern. Talking with my wife yesterday, she said, I know that. The man on the street knows that. Why doesn't the elected constable know that? The district attorney, the chief law enforcement official for Dallas County, defending this. Why didn't they know that? But Judge Solis got it right. It's been clearly established for decades. And this issue of citizen speech versus official speech is the issue that gives everybody fits, but it wasn't an issue in this case. So you don't even look at the Garcetti issue, you just look about, it's the straightforward retaliation, and that's the claim. I believe so, Your Honor, because Dallas County never said, hey, Harman was speaking as part of his job. Derek Evans never said this was part of his job. So as I understand the Garcetti case and the cases that follow, the question is, in Garcetti, did the assistant district attorney, was it part of his job to report the wrongdoing in the Los Angeles County district attorney's office? But even if it was part of his job, they can't retaliate against him for that. Your Honor, in this court's jurisprudence, if you're talking about First Amendment, I think this court has said, and the Supreme Court has said, if he's doing his job. That's First Amendment, but if it's, but we're talking about retaliatory discharge, do we have claims under an employment law? I don't think they can retaliate. I don't think they have protection for retaliation under any law, under any case from this court. So no, Your Honor, I raised this issue. Judge Solis correctly said every reasonable official would understand this. There was no official speech. There was no qualified immunity. What's your equal protection claim, and does it survive, really? Yes, Your Honor, I believe it does, and I'll tell you why. Because in the state court, we said, hey, we didn't get a grievance. And Maddie Malden-Taylor, who was the HR director for Dallas County, said, told us in an affidavit in state court, said everybody's got grievance rights. Dallas County has a system where after 2003, deputy constables who are hired don't have civil service protection. So there's a two-tiered system, and those who have civil service get their grievances heard by the Civil Service Commission. Those who don't may or may not get their grievances considered or heard by their department head, the elected constable, who very often is the person who terminated that. So it's people hired before 2003 are treated with better protection than people, and that's the equal protection claim. Yes, Your Honor, and the reason it survives is because in this, in federal court, Maddie Malden-Taylor testified that, no, what I said in state court was not right. The non-civil service deputies do not have grievance rights. They have a right to complain. And this court has said, and I'm drawing a blank on the name of the case, I think it's the Professional Association of College Educators, what I think of as the Pace case, said employers don't have to set up a grievance system. But once you do, you can't discriminate. And so that's exactly what they're doing. Maddie Malden-Taylor also testified that those who, those terminated employees who go to civil service, some of them get their jobs back. She could cite not a single example of an employee who had a department grievance with the constable who got his job back. And that's a, that's a big difference. It's kind of the, to borrow someone, Justice Ginsburg's language, I think, you know, you know, the whole milk, full-fledged civil service grievance, we want the whole deal. We want the civil service grievance. We think we're allowed that. It's a fundamental right, the right to petition the government. It should have been subjected to strict scrutiny and the ordinance should have been declared unconstitutional. Is there an issue about whether or not it was requested timely or any of that? Again, I think there's some conversation or discussion of that in the order. Dallas County didn't raise the issue. They didn't say, hey, replead this claim. In this case, there was an original complaint and a Rule 7 reply. And this was not a case where I ever amended 18 times to defeat summary judgment motions. So did, so did you ask the district, what's, what's their situation on amendment? Do we need, is there a necessity for an amendment? I don't think there was a need for an amendment. I believe that we stated the petition claim fairly, the state law rules, or do we give fair notice to an attorney of reasonable competence? Mr. Wade is certainly a reasonably competent attorney, although he was not in the trial court. This issue was, was not noted until the, one of the judgments, one of the memorandum opinions. So, so your Honor, we think it survives. It's a denial of equal protection related to a fundamental right, and we're asking the court, number one, to reverse the decision, determine that there was no res judicata, determine that there is no qualified immunity, and allow us to move forward on the equal protection claim. And my time has expired. Thank you. Thank you. May it please the court. I'm Assistant District Attorney Dallas County, District, Assistant District Attorney Frank Wade, and I represent Dallas County today, and former Constable Derek Evans. This case lived a two-year life in state court, and was resolved by, by judgment in the state court that was never appealed, and it's been in litigation for Judge Lindsey, in disposing of the claims in this federal case, wrote an 18-page opinion initially, and followed that up with a 45-page opinion. I don't think we've done anything in our briefs that have been better or shed any light on the analysis that Judge Lindsey did, but for purposes of my response here today, I'm just going to outline the key points of his, his rulings. Judge Lindsey first found res judicata barred all claims against Dallas County. He recognized, in looking at the, the various orders in the state district court, that all parties, all claims were resolved, and there was an appealable final judgment that was not appealed. The whistleblower case was dismissed as untimely. The equal protection claim in state court was likewise dismissed for failure to state a claim. There was no waiver of immunity to bring a direct equal protection claim under the Texas Constitution. There's not an extensive analysis in the state district court, but the plea to the jurisdiction practice was a plea to the jurisdiction, and a motion to dismiss that was filed in that court, focused on immunity with respect to the equal protection violation under the Texas Constitution. Can you address privity and the same causes of action issues? Yes, the privity issue, of course, relates to Constable Evans, because he was not, he was below. Judge Lindsey, in going through the analysis for res judicata, noted that Dallas County and Harmon were both parties below, so he jumped past the privity issue with respect to Dallas County. Dallas County was entitled to res judicata. With respect to privity, I read his analysis to say, I'm going to decide that Constable Evans is entitled to qualified immunity, and I'm going to do a qualified immunity analysis to dispose of the first amendment retaliation claim. So you're saying he's not in privity, so that's not why we're, for his claim against him? Judge Lindsey didn't expressly rule. If you ask me today, I think he was in privity. The allegations in the whistleblower case involved his alleged retaliation, and so his interests were at stake. The facts of the case involved his alleged retaliation, and responding to that claim, the county would have been vicariously liable if Constable Evans had retaliated and the county had been held liable on those facts. Did Dallas County take positions adverse to Mr. Evans in, is it Evans? Yeah, to Mr. Evans in the state court by saying that he was acting ultra-virus, and that he did not, that he, that if he did that, he shouldn't have done it, and he's not on us. And so now you're advocating for him today? Is that right? Let me be clear, let me be clear about the ultra-virus claims and the mootness claims. In the state court claim, the lawsuit included allegations of illegal ticket practices, illegal ticket quotas, unlawful towing. The arguments in the state district court, those arguments frankly were irrelevant and moot, that those issues of illegal conduct were to be adjudicated in other places. There was a report done. Frankly, it wasn't for the employment case to determine whether there was an illegal practice of setting ticket quotas or towing. And so those alleged illegal acts were matters that needed to be made directly against the public official who was violating the law. Dallas County was immune from liability. There was no, there's no waiver of liability for ticket, for an elected constable illegally engaging in ticket quotas. And so the argument in the district court was not only are those claims completely irrelevant to the employment retaliation claim, but if you want to sue Derrick Evans for ultra-virus act, illegal ticket practices, then you need to probably sue him in another case and bring those claims for injunctive and declaratory relief. And those were claims for injunctive and declaratory relief that were actually dismissed in a subsequent order by the state court. After the district court, state district court dismissed the whistleblower and equal protection claims, the court came back after allowing amendment of pleadings and then dismissed the declaratory judgment and injunction claims that related to any alleged illegal ticket practices or any other unlawful conduct by the elected constable in running his office. So, is it true that Dallas County never took any sort of adverse position to Evans regarding the employment law matters and the whistleblowing in the state court? Did they ever say, well if that happened, that's on him, that he's involved in that and we didn't know? Anything like that? The plea to the jurisdiction in the district court went to an untimely filing of the whistleblower claim. The whistleblower cause of action had a 90 day limitations period and it wasn't met. Okay, the question was not defined to just the whistleblower claim. Did Dallas County take any position adverse to Mr. Evans regarding the employment law situation that's at issue in this lawsuit in the state court? I don't believe so. I don't think raising limitations was an adverse position to Constable Evans. And as to the equal protection argument, it was a straightforward immunity argument. So, I don't construe those as being adverse to the interest. In fact, I think they protect the interest of Constable Evans. And if we did find privity and we did dispose of the claim against Evans based on qualified immunity, I think Judge Lindsey could have found restitute of conduct was applicable to Derrick Evans and dismissed the claims against Evans on that basis. And the causes of action? The fact that the claims are different? I'm sorry, the question? Does it matter for Rose Giudicata that the claims are different here? Under the full faith and credit given a Texas judgment, it's claims that could have been made. In Hogue v. Royce City, this court was very clear that you can't hold back your federal claims, litigate your state wrongful termination suit first, and then come back around and litigate your federal claims arising out of the same operative facts. And all these claims were ripe at the time of the state law? The federal claims? Yes. Yes. Essentially, the operative facts are Harmon reported Evans violations of law and Evans retaliated by terminating his employment. Those are the operative facts and they were ripe for purposes, I suppose. He would have been on notice of those same claims with respect to whistleblower and for purposes of First Amendment retaliation. Can you discuss the equal protection claims, please? Yes. The equal protection claim, first of all, is premised on a misconception of how the petition clause works in the employment context. Much like the First Amendment retaliation lines of cases, the Supreme Court in Borough of Durya v. Garderi, cited in the brief and in the judge's orders, makes clear that the analysis with respect to First Amendment claim is whether the petitioning that's going on, in this case the attempt to grieve, is the act of an employee and relates to the employee's personal situation, or if it's the act of a citizen and relates to a matter of public concern. In the employment context, I think Garderi, which is followed by this Court's decision in Gibson v. Kilpatrick, make it very clear that in the context of employment, that the right to petition is not fundamental as is being asserted here. Essentially, with respect to the issue of who's in and who's not in the grievance system, the civil service system at Dallas County, I believe that's a local matter. Different categories of employees are put into the grievance system and protected with appeal rights at different times for different policy reasons. That's a prerogative of local government. I don't think it's a federal issue. I think the case that counsel cited, Professional Association of Colleges v. El Paso Community College, simply stands for the proposition, and as he concedes, it does stand for the proposition that you don't look to the First Amendment to find an employee grievance right. We could talk about the 14th Amendment due process right, invested property interest, and the amount of process that is due. Although that's 14th Amendment jurisprudence, not First Amendment jurisprudence. It's not equal protection or jurisprudence. It's due process. But the point I want to make about Professional Association of College Educators is that while that case notes that if you do have a grievance process, you can't exclude union members, that's not so much a petition issue as this court ruled in that case, but that's a freedom of association issue. Let me interrupt you and take you back to qualified immunity. Yes. Correct me if I'm wrong, it seems that you are pivoting solely on the clearly established prong. You're not contesting, and correct me if I'm wrong, you're not contesting, number one, whether Mr. Harmon's First Amendment right was violated, assuming the facts alleged are true. You're just contesting whether that right was clearly established at the time. Am I getting that right? Well, that was Judge Lindsay's analysis, and I don't disagree with him. I think what we look at there is Lane versus Franks, and we recognize that this is a vexing question. Whether it's a lawyer on a court of appeals making a complaint against a judge, or whether it's a police officer, a cop, making a claim against a peace officer, when is that citizen speech? And until Lane versus Franks was decided, that looked a lot like employee speech. And after Garcetti, we had cases where we're trying to figure out whether the government employee is acting as a citizen or acting as an employee and making complaints. But in the law enforcement and judicial context, you're in the business of making reports of violations of law. So that looks more, it does look more, until we get to Franks and we get a new test and we're focused on the ordinary duties. So if you're in the ordinary, your ordinary duties, you don't talk to the FBI, then you're probably acting as a citizen when you're talking to the FBI. And we have some clarity after Franks, and, of course, this court followed that in Town of Ball, Howell versus Town of Ball, that holding. And I think at that point, now we're talking about 2016, it becomes clear what the law of qualified immunity is with respect to a police officer complaining about ticket quotas and towing practices. That sounds a lot like the... What do you do with the Cutler case that was before, instead of what is established as early as 2010? Well, I don't have the Cutler facts in front of me, but I'm familiar with the line of cases after Garcetti. And he relies on one of them, which is, I don't, these cases all fall in the same pattern. When you're the IT director and you complain that your pornography investigation wasn't followed up on by administration, you're probably talking as an employee. But when you take that complaint outside and you publicize that complaint and you add to that complaint that you think the faculty and staff of the university are being overpaid, now you sound a lot like a citizen. So those cases all applied Garcetti's arising out of employment standard and didn't focus on this ordinary course of business element that was added by the Supreme Court in Franks. Until Judge Lindsey ruled, had Dallas County focused attention on Garcetti at all? Is it true that that wasn't even litigated before Judge Solis? And that y'all didn't raise that point? I did not do the briefing in the trial court. I reviewed the briefing and I... That's not a personal criticism, sir. I'm just trying to figure out whether or not it was raised in the district court by the party or whether we shouldn't consider it because it wasn't raised by the party. I don't think it's a mischaracterization by counsel to say that the position of the county initially focused on causation. When did the county focus its position differently before this appeal? Judge Lindsey, when he reviewed, when the case was reassigned from Judge Solis after his retirement, Judge Lindsey asked for supplemental briefing on the issue of qualified immunity. So he sui sponte raised it and then you provided a brief that said Garcetti applied and qualified immunity applied. Did you argue that in that brief, the first brief when you were asked to do what brief? When he asked us to focus on qualified immunity, the issue of qualified immunity based on the element, the Garcetti element, that briefing was done. I believe that's what the record reflects. And jumping back to race judicata for a second, I just want to make sure I'm clear. So it's your contention that in the state court litigation, there was no daylight in the arguments advanced on behalf of Dallas County and Mr. Evans' interests. There were no arguments made by the county that, as Judge Elrod mentioned earlier, were along the lines of, well, that's on him and you better go after him, if that's your assertion. I'm just trying to get a sense of... Well, I think in candor to the court, obviously when we took the position in the state district court that illegal ticket practices and quotas and towing policies were acts of violations of law for which Dallas County wouldn't be liable. And if you wanted to hold somebody liable for that, you needed to bring a proper claim, an ultra vires claim. And these were claims of injunctive relief and declaratory relief that we thought were irrelevant, but there they were. And so we did take the position, if you want to sue him for that, which doesn't advance the ball in the employment case one way or another, the public official engaged in official acts that are illegal under Texas jurisprudence, those are ultra vires acts for which you can sue the public official. I don't mean to be unresponsive to your claim, but that is the position that Dallas County took. I don't think it was direct, it was a point of law that allowed us to obtain a dismissal of both the declaratory claim and the injunctive claim and didn't result in any liability finding on Evans because part of that was mootness too. Those matters had been investigated by officials years earlier. These allegations were raised in 2009. This case was being litigated several years later. So mootness, governmental immunity, ultra vires, those were all claims aimed at the issue of wrongful actions. How do you respond to the argument that some of the dismissals in the state court were for lack of jurisdiction or mootness? And that mootness is not, you agree that mootness is not raised judicata, right? Not with respect to a judgment, a final appealable judgment in state court. All of the cases he cites for jurisdictional, the premise that jurisdictional and mootness holdings are not raised judicata, our federal courts looking at what another federal court did and sending a civil service case back from the court of claims and saying your equity claims are dismissed because you didn't bring a monetary claim, they all arise in that context. He doesn't cite a single case that involves full faith and credit of a dismissal by a state court. So it's your position that a lack of jurisdiction or mootness are raised judicata-able, that they are subject to raised judicata? Your Honor, I'm not sure that, you know, I haven't seen that case. I would say – Well, don't you have to have that case because you have to say it's raised judicata. He doesn't have to say it's not until you can say it is. Well, under Texas law, when you have a judgment that disposes of all claims, all claims and all parties, you have an appealable final judgment. He had an appealable final judgment. A small part of that judgment, to be candid with the court, is the mootness argument with respect to ticket quotas and tolling practices. And we argued that that stuff was moot, and that stuff was ultra-virus, and that was something we had to deal with. It was a part of a judgment. But six months earlier, the judge dismissed the employment law case, which is all we have here. You don't have any claims in front of you about ticket practices and ticket fixing or towing quota – ticket quotas and towing practices. You don't have that case. You have an employment case. That was dismissed months earlier by the district court on the equal protection claim and on the whistleblower claim, which are the claims before you, the operative claims before you. I think we have your argument. Thank you, counsel. Thank you. May it please the court. I want to answer some questions. The question, was Dallas County adverse to Evans in the state court? Absolutely. Since I'm in Houston, I'll point out that the amount of daylight between Evans and Dallas County, you could build the Astrodome in that daylight. They said, Mr. Waite said it twice here today, we told them, sue Evans. That's what they did in state court. Do you have the record excerpts or the citations handy that you can steer us to on those points? That kind of demonstrate how they were not aligned or were opposed to each other? Not a record. I apologize, Your Honor. I don't have the record excerpt to say where they said sue Evans, but their whole replete through their briefing is these are ultra-virus claims that you have to bring against the official. And I didn't hear Mr. Waite dispute that today. He, in fact, said twice. We told him to sue the official if he wanted to sue the official. I don't want someone representing my interests in a case I'm not appearing as a party to tell somebody to sue me. I don't think that's representing my interests. They're not in privity. So there's just no privity. They're not the same parties. Mr. Waite said Judge Lindsey jumped past privity. He ignored the fact that Eric Evans was not in the state court lawsuit. Dallas County was adverse to Evans. To answer Judge Elrod's question, I don't think that Dallas County ever said we did not know that Evans was doing these things, and they would have been hard-pressed to say that because they commissioned, as Mr. Waite noted, a 120-page investigation report that concluded that Mr. Evans had broken all kinds of laws. Lots of laws that Norris Harmon didn't even complain, and that's in the record. I don't know what the site is, but we call it the Defenbaugh Report. That was commissioned by Dallas County, the commissioner's court. So they knew. They didn't deny he did those things. With respect to the denial of equal protection, they have two grievance systems. It is a fundamental right, and the Pace case does talk about union memberships. It's a right of association case. It's a First Amendment case, and this court said you can't discriminate such that it infringes on rights of association. It's not precisely on point with First Amendment rights of the right to petition, but I can see no reason why this court could say you're allowed to discriminate in grievance rights when you set up your grievance system, but you can't discriminate based on association or union membership. They're all First Amendment rights. Norris Harmon has a First Amendment right to petition. We sued under equal protection because Dallas County has set up two separate systems, and what this court said is if you have suspect classifications, they're subject to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest. Similar oversight by the courts is due when state laws impinge on personal rights protected by the Constitution. So Dallas County, Mr. Evans, can say, well, it's a union case. It doesn't really apply here. I think it does. It's the only case that really talks about this issue, and this court said once you've set up this system, which Dallas County has, you may not discriminate. We don't think they can discriminate and provide some employees these grievance rights, greater protection under a civil service system and deny others who have a department grievance I don't know that there's any evidence of this beyond Ms. Malden-Taylor's testimony about she didn't know anybody who got their job back through a department grievance. We think the Professional Association of College Educators applies. Judge Elrod, you also asked when was this Garcetti issue raised or addressed by Dallas County, and the answer is never. Not in the supplemental brief? If you look at the supplemental brief, the answer is no, Judge. They still stuck with causation. Judge Lindsey said brief this, and the issue with citizen speech, official speech, even in the supplemental brief, and I looked at it last night, it's not in there. So they didn't raise it. I love a fight. It's an adversarial proceeding. It's kind of hard to fight the DA and the judge. That was improper, and we ask the court to reverse the decision. Thank you. Thank you. We have your argument. This case is submitted.